## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

**v.**

KEVIN G. WHITE,
KGW CAPITAL MANAGEMENT, LLC,
REVELATION FOREX FUND, L.P., and
RFF GP, LLC,

        Defendants,

and

MERIDIAN PROPANE, L.P., and
W CORPORATE REAL ESTATE, L.P. d/b/a
KGW REAL ESTATE,

        Relief Defendants.

§ § § § § § § § § § § § § § § § § §

**13-MC-0105**

Case No.:  4:13cv383
SEALED

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 17 2013

JEFFREY P. COLWELL
CLERK

---

### ORDER APPOINTING RECEIVER

    **WHEREAS** this matter has come before this Court upon motion of the Plaintiff

Securities and Exchange Commission ("SEC", "Commission" or "Plaintiff") to appoint a

receiver in the above-captioned action; and,

    **WHEREAS** the Court finds that, based on the record in these proceedings, the

appointment of a receiver in this action is necessary and appropriate for the purposes of

marshaling and preserving all assets of the Defendants ("Receivership Assets"); and,

    **WHEREAS** this Court has subject matter jurisdiction over this action and personal

jurisdiction over the Defendants, and venue properly lies in this district;



**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following Defendants: Kevin Geoffrey White, KGW Capital Management, LLC, Revelation Forex Fund, L.P., and RFF GP, LLC (collectively, the "Receivership Defendants").

2.     Until further Order of this Court, _____Kelly M. Crawford_____,

_____,

is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Defendants.

## I. Asset Freeze

3.     Except as otherwise specified herein, all Receivership Assets and all assets of the Relief Defendants are frozen until further order of this Court.  Accordingly, all persons and entities with direct or indirect control over any Receivership Assets and/or any assets of the Relief Defendants, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets.  This freeze shall include, but not be limited to, Receivership Assets and any assets of the Relief Defendants that are on deposit with financial institutions such as banks, brokerage firms and mutual funds.

## II. General Powers and Duties of Receiver

4.     The Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers, members, and general and limited partners of the entity Receivership Defendants under applicable state and federal law, by the governing charters,

by-laws, articles and/or agreements, in addition to all powers and authority of a receiver at

equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and

1692, and Fed.R.Civ.P. 66.

5.      The trustees, directors, officers, managers, employees, investment advisors,

accountants, attorneys, and other agents of the Receivership Defendants are hereby dismissed

and the powers of any general partners, directors and/or managers are hereby suspended.  Such

persons and entities shall have no authority with respect to the Receivership Defendants'

operations or assets, except to the extent as may hereafter be expressly granted by the Receiver.

The Receiver shall assume and control the operation of the entity Receivership Defendants and

shall pursue and preserve all of their claims.

6.      No person holding or claiming any position of any sort with any of the entity

Receivership Defendants shall possess any authority to act by or on behalf of any of those

Receivership Defendants.

7.      Subject to the specific provisions in Sections III through XIV, below, the

Receiver shall have the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location and value of all
property interests of the Receivership Defendants, including, but not
limited to, monies, funds, securities, credits, effects, goods, chattels, lands,
premises, leases, claims, rights, and other assets, together with all rents,
profits, dividends, interest, or other income attributable thereto, of
whatever kind, which the Receivership Defendants own, possess, have a
beneficial interest in, or control directly or indirectly ("Receivership
Property" or, collectively, the "Receivership Estates");

B.      To take custody, control and possession of all Receivership Property and
records relevant thereto from the Receivership Defendants; to sue for and
collect, recover, receive, and take into possession from third parties all
Receivership Property and records relevant thereto;

C.      To manage, control, operate, and maintain the Receivership Estates and
hold in his possession, custody, and control all Receivership Property,

pending further Order of this Court;

D.     To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E.     To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, members, trustees, and agents of the Receivership Defendants;

F.     To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

G.     To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.     To issue subpoenas to compel testimony of persons or production of records consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Fed. R. C. P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order;

I.     To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.     To pursue, resist, and defend all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and

K.     To take such other action as may be approved by this Court.

### III. Access to Information

8.     The individual Receivership Defendants and the past and/or present officers,

directors, agents, managers, members, general and limited partners, trustees, attorneys,

accountants, and employees of the entity Receivership Defendants, as well as those acting in

their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith

all paper and electronic information of, and/or relating to, the Receivership Defendants and/or all

Receivership Property; such information shall include but not be limited to books, records,

documents, accounts, and all other instruments and papers.

9.      Within ten (10) days of the entry of this Order, the Receivership Defendants shall

provide to the Receiver and the Commission copies of the Receivership Defendants' federal

income tax returns for 2008 through 2012, with all relevant and necessary underlying

documentation.

10.     The individual Receivership Defendant (Kevin G. White) and the entity

Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers,

members, shareholders, employees, accountants, debtors, creditors, and general and limited

partners, and other appropriate persons or entities shall answer under oath to the Receiver all

questions which the Receiver may put to them and produce all documents as required by the

Receiver regarding the business of the Receivership Defendants, or any other matter relevant to

the operation or administration of the receivership or the collection of funds due to the

Receivership Defendants.  In the event that the Receiver deems it necessary to require the

appearance of the aforementioned persons or entities, the Receiver shall make its discovery

requests in accordance with the Federal Rules of Civil Procedure.

11.     The Receivership Defendants are required to assist the Receiver in fulfilling his

duties and obligations.  As such, they must respond promptly and truthfully to all requests for

information and documents from the Receiver.

### IV.  Access to Books, Records, and Accounts

12.     The Receiver is authorized to take immediate possession of all assets, bank

accounts, or other financial accounts, books and records, and all other documents or instruments

relating to the Receivership Defendants.  All persons and entities having control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

13.     The Receivership Defendants, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this Order by personal service, facsimile transmission, or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Defendants are hereby directed to deliver the same to the Receiver, his agents, and/or employees.

14.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Defendants that receive actual notice of this Order by personal service, facsimile transmission, or otherwise shall:

    A.    Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendants except upon instructions from the Receiver;

    B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

    C.    Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

    D.    Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

### V. Access to Real and Personal Property

15.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically

stored information, computers, laptops, hard drives, external storage drives, and any other such

memory, media or electronic storage devices, books, papers, data processing records, evidence of

indebtedness, bank records and accounts, savings records and accounts, brokerage records and

accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments,

contracts, mortgages, furniture, office supplies, and equipment.

16.     The Receiver is authorized to take immediate possession of all real property of the

Receivership Defendants, wherever located, including but not limited to all ownership and

leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service,

facsimile transmission, or otherwise, all persons other than law enforcement officials acting

within the course and scope of their official duties, are (without the express written permission of

the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such

premises; or, (c) destroying, concealing, or erasing anything on such premises.

17.     In order to execute the express and implied terms of this Order, the Receiver is

authorized to change door locks to the premises described above.  The Receiver shall have

exclusive control of the keys.  The Receivership Defendants, or any other person acting or

purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have

duplicate keys made, nor shall they have keys in their possession during the term of the

receivership.

18.     The Receiver is authorized to open all mail directed to or received by or at the

offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior

to the entry of this Order, to determine whether items or information therein fall within the

mandates of this Order.

19.     Upon the request of the Receiver, the U. S. Marshals Service, in any judicial

district, is hereby ordered to assist the Receiver in carrying out his duties to take possession,

custody, and control of, or identify the location of, any assets, records, or other materials

belonging to the Receivership Estates. In addition, the Receiver is authorized to request similar

assistance from any other federal, state, county, or civil law enforcement officer(s) or

constable(s) of any jurisdiction.

## VI. Notice to Third Parties

20.     The Receiver shall promptly give notice of his appointment to all known officers,

directors, agents, employees, shareholders, creditors, debtors, managers, members, and general

and limited partners of the Receivership Defendants, as the Receiver deems necessary or

advisable to effectuate the operation of the receivership.

21.     All persons and entities owing any obligation, debt, or distribution with respect to

an ownership interest to any Receivership Defendant shall, until further ordered by this Court,

pay all such obligations in accordance with the terms thereof to the Receiver, and its receipt for

such payments shall have the same force and effect as if the Receivership Defendant had

received such payment.

22.     In furtherance of his responsibilities in this matter, the Receiver is authorized to

communicate with, and/or serve this Order upon, any person, entity, or government office that he

deems appropriate to inform them of the status of this matter and/or the financial condition of the

Receivership Estates.   All government offices which maintain public files of security interests in

real and personal property shall, consistent with such office's applicable procedures, record this

Order upon the request of the Receiver or the SEC.

23.     The Receiver is authorized to instruct the United States Postmaster to hold and/or

reroute mail which is related, directly or indirectly, to the business, operations, or activities of

any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or

for the benefit of, the Receivership Defendants. The Postmaster shall not comply with, and shall

immediately report to the Receiver, any change of address or other instruction given by anyone

other than the Receiver concerning the Receiver's Mail. The Receivership Defendants shall not

open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when

received, to the Receiver. All personal mail of any individual Receivership Defendants, and/or

any mail appearing to contain privileged information, and/or any mail not falling within the

mandate of the Receiver, shall be released to the named addressee by the Receiver. The

foregoing instructions shall apply to any proprietor, whether individual or entity, of any private

mail box, depository, business or service, or mail courier or delivery service, hired, rented, or

used by the Receivership Defendants. The Receivership Defendants shall not open a new

mailbox or take any steps or make any arrangements to receive mail in contravention of this

Order, whether through the U.S. mail, a private mail depository, or courier service.

24.     Subject to payment for services provided, any entity furnishing water, electric,

telephone, sewage, garbage, or trash removal services to the Receivership Defendants shall

maintain such service and transfer any such accounts to the Receiver unless instructed to the

contrary by the Receiver.

25.     The Receiver is authorized to assert, prosecute, and/or negotiate any claim under

any insurance policy held by or issued on behalf of the Receivership Defendants, or their

officers, directors, agents, employees, or trustees, and to take any and all appropriate steps in

connection with such policies.

## VII.  Injunction Against Interference with Receiver

26.     The Receivership Defendants and all persons receiving notice of this Order by

personal service, facsimile transmission, or otherwise, are hereby restrained and enjoined from

directly or indirectly taking any action or causing any action to be taken, without the express

written agreement of the Receiver, which would:

A.   Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.   Hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include, but are not limited to, concealing, destroying, or altering records or information;

C.   Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include, but are not limited to, releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or,

D.   Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

27.   The Receivership Defendants shall cooperate with and assist the Receiver in the

performance of his duties.

28.   The Receiver shall promptly notify the Court and SEC counsel of any failure or

apparent failure of any person or entity to comply in any way with the terms of this Order.

## VIII.  Stay of Litigation

29.   As set forth in detail below, the following proceedings, excluding the instant

proceeding and all police or regulatory actions and actions of the Commission related to the

above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or (d) any of the Receivership Defendants' past or present officers, directors, managers, members, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

30.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

31.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.   Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

### IX.  Managing Assets

32.     For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

33.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of [Name of Receivership Defendant]" together with the name of the action.

34.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership

Estates, and with due regard to the realization of the true and proper value of such Receivership Property.

35.     Subject to Paragraph 36 below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estates, and with due regard to the realization of the true and proper value of such real property.

36.     The Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates only after first obtaining Court authorization, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004.

37.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

## X. **Investigate and Prosecute Claims**

38.     Subject to the requirement, in Section VIII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

39.     Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estates, as the Receiver deems necessary and appropriate. The Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.

40.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Defendants.

41.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estates.

## XI. **Bankruptcy Filing**

42.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants. If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor-in-possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor-in-possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 4 above, the Receiver is vested with management authority for all entity

Receivership Defendants and may therefore file and manage a Chapter 11 petition.

43.    The provisions of Section VIII above bar any person or entity, other than the

Receiver, from placing any of the entity Receivership Defendants in bankruptcy proceedings.

## XII. Liability of Receiver

44.    Until further Order of this Court, the Receiver shall not be required to post bond

or give an undertaking of any type in connection with his fiduciary obligations in this matter.

45.    The Receiver and his agents, acting within the scope of such agency ("Retained

Personnel"), are entitled to rely on all outstanding rules of law and Orders of this Court and shall

not be liable to anyone for their own good faith compliance with any order, rule, law, judgment,

or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their

good faith compliance with their duties and responsibilities as Receiver or Retained Personnel,

nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted

by them except upon a finding by this Court that they acted or failed to act as a result of

malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

46.    This Court shall retain jurisdiction over any action filed against the Receiver or

Retained Personnel based upon acts or omissions committed in their representative capacities.

47.    In the event the Receiver decides to resign, the Receiver shall first give written

notice to the Commission's counsel of record and the Court of its intention, and the resignation

shall not be effective until the Court appoints a successor.  The Receiver shall then follow such

instructions as the Court may provide.

## XIII. Recommendations and Reports

48.    The Receiver is authorized, empowered, and directed to develop a plan for the

fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and

recoverable Receivership Property (the "Liquidation Plan").

49. Within ninety (90) days of the entry date of this Order, the Receiver shall file the

Liquidation Plan in the above-captioned action, with service copies to counsel of record.

50. Within thirty (30) days after the end of each calendar quarter, the Receiver shall

file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status

Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the

report) the existence, value, and location of all Receivership Property, and of the extent of

liabilities, both those claimed to exist by others and those the Receiver believes to be legal

obligations of the Receivership Estates.

51. The Quarterly Status Report shall contain the following:

A.    A summary of the operations of the Receiver;

B.    The amount of cash on hand, the amount and nature of accrued
      administrative expenses, and the amount of unencumbered funds in the
      estate;

C.    A schedule of all the Receiver's receipts and disbursements (attached as
      Exhibit A to the Quarterly Status Report), with one column for the
      quarterly period covered and a second column for the entire duration of
      the receivership;

D.    A description of all known Receivership Property, including approximate
      or actual valuations, anticipated or proposed dispositions, and reasons for
      retaining assets where no disposition is intended;

E.    A description of liquidated and unliquidated claims held by each
      Receivership Estate, including the need for forensic and/or investigatory
      resources; approximate valuations of claims; and anticipated or proposed
      methods of enforcing such claims (including likelihood of success in: (i)
      reducing the claims to judgment; and, (ii) collecting such judgments);

F.    A list of all known creditors with their addresses and the amounts of their
      claims;

G.    The status of Creditor Claims Proceedings, after such proceedings have
      been commenced; and,

H.   The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

52.   On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XIV.  Fees, Expenses, and Accountings

53.   Subject to Paragraphs 54 – 60 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

54.   Subject to Paragraph 55 below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.

55.   The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

56.   Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC

a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

57.    All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

58.    Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

59.    Each Quarterly Fee Application shall:

A.    Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.    Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estates; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estates, or any sharing thereof.

60.    At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

IT IS SO ORDERED.
            SIGNED this the 9th day of July, 2013.


                                    *Richard A. Schell*
                                    RICHARD A. SCHELL
                                    UNITED STATES DISTRICT JUDGE
                                    Page 17 of 17

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § |
| | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §       MISC. ACTION NO. |
| | § |
| KEVIN G. WHITE, | § |
| KGW CAPITAL MANAGEMENT, LLC, | § |
| REVELATION FOREX FUND, L.P., and | § |
| RFF GP, LP, | §       **13-MC-0105** |
| | § |
| Defendants, | § |
| | § |
| MERIDIAN PROPANE, L.P., and | § |
| W CORPORATE REAL ESTATE, LP d/b/a | § |
| KGW REAL ESTATE, | § |
| | § |
| Relief Defendants. | § |
| | § |

## NOTICE OF APPOINTMENT OF RECEIVER

Pursuant to the provisions of 28 U.S.C. § 754, Kelly M. Crawford provides notice of his appointment as Temporary Receiver for the assets of Kevin G. White, KGW Capital Management, LLC, Revelation Forex Fund, LP, and RFF GP, LP. True and correct copies of the *Complaint* filed by the Securities and Exchange Commission; the *Order Appointing Receiver*; and the *Order Granting Motion to Unseal Docket and Proceedings* are attached hereto as **Exhibit A**, **Exhibit B**, and **Exhibit C** respectively.

_____
Kelly M. Crawford, Receiver

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § | |
| Plaintiff, | § § | |
| **v.** | § § | Case No.:  4:13cv383 |
| **KEVIN G. WHITE,** **KGW CAPITAL MANAGEMENT, LLC,** **REVELATION FOREX FUND, L.P., and** **RFF GP, LLC,** | § § § § § | |
| Defendants, | § § | |
| and | § § | |
| **MERIDIAN PROPANE, L.P., and** **W CORPORATE REAL ESTATE, L.P. d/b/a** **KGW REAL ESTATE** | § § § § | |
| Relief Defendants. | § | |

### COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint

against Defendants Kevin G. White, KGW Capital Management, LLC, Revelation Forex Fund,

L.P., and RFF GP, LLC (collectively "Defendants") and Relief Defendants Meridian Propane,

L.P. and W Corporate Real Estate, L.P. d/b/a KGW Real Estate (collectively "Relief

Defendants"), and would respectfully show the Court as follows:

### SUMMARY

1.     The Commission brings this emergency action to halt an on-going, fraudulent

Forex[1] trading scheme being run by Kevin G. White of Plano, Texas.  White, an individual

---

[1]     The term "Forex" is a commonly used abbreviation for "foreign exchange" and is typically used to describe
trading of various currencies in the foreign exchange market by investors and speculators.  The foreign exchange



barred by the New York Stock Exchange ("NYSE") in 1992, operates this fraud through two primary entities that he owns and controls: KGW Capital Management, LLC ("KGW Capital") and Revelation Forex Fund, L.P. (the "Fund"). KGW Capital purports to be "one of the world's leading private investment firms" that "raises, invests, and manages private equity funds, hedge funds, real estate and other alternative investment vehicles for institutions and high net worth individuals worldwide." Through White's activities, KGW Capital solicits and raises money for the Fund, described as "a $1 billion highly specialized currency hedge fund" that pools investor funds to trade foreign currencies. Neither White nor KGW Capital nor the Fund is registered with the Commission, the U.S. Commodity Futures Trading Commission ("CFTC"), the Financial Industry Regulatory Authority ("FINRA"), or any state securities regulator. Likewise, no offerings of securities by White, KGW Capital, or the Fund are registered with the Commission.

2.      Through KGW Capital, White has solicited and raised approximately $7.1 million for the Fund since September 2011 from more than 20 U.S. investors. White and KGW Capital have procured these funds as a result of fraudulent misrepresentations to investors. And, of these investor funds, White has misappropriated more than $1.7 million to, among other things: (i) pay personal expenses, (ii) finance expensive trips, and (iii) fund other unrelated and undisclosed businesses and investments.

3.      To solicit investments in the Fund, White and KGW Capital misrepresent to investors and prospective investors that the Fund has achieved total returns of more than 393% since its inception in January 2009 and a compound annual rate of return of more than 36%.

---

market is a global, decentralized marketplace that determines the relative values of different currencies. Unlike other financial markets, there is no centralized depository or exchange where transactions are conducted. Instead, these transactions are conducted by several market participants in several locations. Much of the trading is done electronically or by phone, usually through regulated brokers or retail foreign exchange dealers ("RFEDs").

White and KGW Capital boast – in marketing materials provided to prospective investors and on the websites for KGW Capital and the Fund – that an initial investment of $250,000 in the Fund in January 2009 would have grown to $964,591 by April 30, 2013, and to $983,111 by May 31, 2013. These claims – and others made by White and KGW Capital to investors and prospective investors – are false. In fact, the Fund has incurred trading losses of $550,000, plus approximately $1,419,600 in unrealized losses (through May 31, 2013), since it began Forex trading in 2011. And while White and KGW Capital tout the Fund's track record since January 2009, the Fund's bank and brokerage records reveal that the Fund neither received investor funds nor began trading until September 2011.[2] Defendants White, KGW Capital, the Fund, and RFF GP knew or were severely reckless in not knowing that these representations to investors were false.

4.      By reason of these activities and the conduct described further below, the Defendants have offered and sold securities, and have violated and, unless enjoined, will continue to violate the antifraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] thereunder.

5.      The Commission, in the interest of protecting the public from any further fraudulent activity and harm, brings this action against the Defendants seeking preliminary and permanent injunctive relief, disgorgement of illicit profits plus accrued prejudgment interest thereon, and a civil monetary penalty, as allowed by law. The Commission also seeks a temporary restraining order against the Defendants, an asset freeze against the Defendants and

---

[2]      Consistent with this timing, White created the Fund in June 2011 and registered the domain name "RevelationForex.com" in July 2011.

9.     **KGW Capital Management, LLC ("KGW Capital")** is a limited liability company created under the laws of the State of Texas in July 2007 with its principal place of business in Plano, Texas. White is KGW Capital's owner, president, chief executive officer, and otherwise controls its operations. KGW Capital purports to be "one of the world's leading private investment firms" and "raises, invests and manages private equity funds, hedge funds, real estate and other alternative investment vehicles for institutions and high net worth individuals worldwide." KGW Capital actively solicits investments in the Fund. Neither KGW Capital nor any its offerings of securities is registered with the Commission, the CFTC, FINRA, or any state securities regulator.

10.    **Revelation Forex Fund, L.P. (the "Fund")** is a limited partnership created under the laws of the State of Texas in June 2011 with its principal place of business in Plano, Texas. The Fund is owned, controlled, and managed by its general partner, RFF GP, LLC, which in turn is owned, controlled, and managed by White. The Fund is described as "a $1 billion highly specialized currency hedge fund." In marketing materials given to prospective investors, the Fund purports to use highly sophisticated and proprietary software (centered around a statistical arbitrage strategy) that it allegedly created to monitor 105 separate currency pairings 24 hours a day, five days a week. Neither the Fund nor any of its offerings of securities is registered with the Commission, the CFTC, FINRA, or any state securities regulator.

11.    **RFF GP, LLC, ("RFF GP")** is a limited liability company created under the laws of the State of Texas in July 2011 with its principal place of business in Plano, Texas. RFF GP is the Fund's general partner, purporting to make all investment decisions for the Fund and to exert exclusive control over day-to-day operations of the Fund. White is RFF GP's manager, director, and registered agent.

*SEC v. Kevin G. White, et al.*
COMPLAINT                                                                                    Page 5

## RELIEF DEFENDANTS

12.     **Meridian Propane, L.P. ("Meridian Propane")** is a limited partnership created under the laws of the State of Texas in August 2012 with its principal place of business in Plano, Texas. Meridian Propane's general partner is Meridian Propane Partners GP, LLC ("Meridian GP"), which is owned, controlled, and managed by White. Meridian Propane has received approximately $248,600 of investor funds from the Fund.

13.     **W Corporate Real Estate, L.P. d/b/a KGW Real Estate ("KGW Real Estate")** is a limited partnership created under the laws of the State of Texas in April 2005 with its principal place of business in Plano, Texas. White owns, controls, and manages KGW Real Estate's general partner, W Corporate Real Estate GP, LLC. KGW Real Estate has received approximately $97,000 of investor funds from the Fund.

## STATEMENT OF FACTS

14.     As discussed in more detail below, White, KGW Capital, the Fund, and RFF GP make a variety of misrepresentations and omissions to investors. As noted below, they make those misrepresentations and omissions: (i) on KGW Capital's website, (ii) on the Fund's website, (iii) in the Private Offering Memorandum for the Fund provided to investors, (iv) in marketing materials handed out to prospective investors, (v) during in-person solicitations to prospective investors, and (vi) in promotional materials provided to the MoneyShow to advertise and market its speakers.

**Misrepresentations and Omissions about White's Background**

15.     White represents to the public (for example, on the public portion of his LinkedIn profile at www.LinkedIn.com) that he earned a Bachelor of Business Administration ("BBA")

*SEC v. Kevin G. White, et al.*
COMPLAINT                                                                                              Page 6

degree from Stephen F. Austin State University in Nacogdoches, Texas.  While he attended the school from September 1978 to May 1981, White neither graduated nor received a degree.

16.     White and KGW Capital also routinely represent to investors and prospective investors[4] that White had a distinguished "25 year Wall Street career" with the Shearson Lehman family of companies.  These representations are false.  In fact, White spent only six years as a licensed securities professional in Houston, Texas before being barred by the New York Stock Exchange ("NYSE").

17.     In January 1982, White entered the securities industry as a registered representative with Shearson Lehman/American Express, Inc. ("Shearson Lehman").   In February 1987, Shearson Lehman terminated White's employment.   In March 1987, White joined E.F. Hutton.  By January 1988, E.F. Hutton had merged with Shearson Lehman and terminated White's employment for not disclosing to E.F. Hutton that at least five customer complaints had been lodged against him while employed by Shearson Lehman.  As a result of his history of customer complaints and/or two terminations, several states took action against White, including:

- Mississippi:  Rejected White's application for registration in May 1987, based on past disciplinary history;

- Florida:  Denied White's application for registration in August 1987, based on his failure to disclose his disciplinary record and his unworthiness to transact the business of an associated person; and

- Illinois:  Revoked White's registration as a salesperson in October 1988.

18.     In July 1992, the NYSE censured and barred White for four years from employment or association with any NYSE member or member organization for:

---

[4]     White and KGW make these representations: (i) on KGW Capital's website, (ii) on the Fund's website, (iii) in the Private Offering Memorandum for the Fund, (iv) in marketing materials handed out to prospective investors, and (v) in promotional materials provided to The MoneyShow to advertise and market its speakers.

- conducting unauthorized options trading in customer accounts;

- engaging in conduct inconsistent with just and equitable principles of trade by making material misstatements to a customer;

- causing a false and misleading document to be sent to a customer;

- entering into trades in the accounts of one or more customers without the knowledge or consent of customers, and

- making a misstatement on his Form U-4 (Uniform Application for Securities Industry Registration) which was filed with the NYSE.

Since the four-year bar, White has not been registered or associated with any NYSE member or member organization.   In addition to falsely describing his background as a distinguished 25-year Wall Street career, Defendants White, KGW Capital, the Fund, and RFF GP failed to disclose White's disciplinary history to prospective investors of the Fund.

19.   In June 1995, White filed for Chapter 7 Bankruptcy protection.   Defendants White, KGW Capital, the Fund, and RFF GP failed to disclose White's bankruptcy history to prospective investors of the Fund.

**White Creates KGW Capital and Uses it to Make Misrepresentations to Investors**

20.   Following his six years in the securities industry, White spent more than a decade working for a variety of non-Wall Street companies.   Subsequently, White became involved in the commercial real estate business, eventually starting his own firm, W Corporate Real Estate, L.P. d/b/a KGW Real Estate, in 2005.

21.   In July 2007, White created KGW Capital.   That same year, White registered the domain name "KGWCapital.com."   KGW Capital represents that it is "one of the world's largest private investment firms . . . [that] raises, invests and manages private equity funds, hedge funds real estate and other alternative investment vehicles for institutions and high net worth individuals."   As discussed below, KGW Capital's website contains a variety of material

misrepresentations and omissions. And White and KGW Capital know or are severely reckless in not knowing that these misrepresentations and omissions are false.

22.    White and KGW Capital offer and sell limited partnership interests in the Fund, which KGW Capital touts as "a $1 billion highly specialized currency hedge fund." KGW Capital also currently purports to offer several other investment opportunities on its website, including: (i) the State of Texas Real Estate Fund – "a $500 million private equity real estate fund . . . run by seasoned real estate veterans who have compiled a 5-year track record that has outperformed almost every major investment index in the world," (ii) the Meridian Propane Fund – a "$25 million tax-advantaged investment fund" that projects a "net IRR of 41% and 3.1X cash multiple to investors" combined with "projected tax savings of $177,000 per $250,000 investment," (iii) KGW Energy Notes (formerly listed as a U.S. Energy Fund) that purport to offer "guaranteed safety of principle [sic]" for 3-year notes paying 10 percent annual returns and 5-year notes paying 12 percent annual returns, and (iv) KGW Tax-Free Certificates of Deposit ("CDs") paying interest rates ranging from 5.5 percent for a one-year CD to 8.5 percent for a five-year CD. Neither KGW Capital nor any of its offerings of securities is registered with the Commission, the CFTC, FINRA, or any state securities regulators.

**White Creates the Revelation Forex Fund and Fraudulently Obtains Investments**

23.    In June 2011, White formed the Fund as a limited partnership under Texas law. The following month, he registered the domain name "RevelationForex.com." During this same timeframe, White prepared, or caused to be prepared, a prospectus for the Fund, which he distributes to investors and prospective investors in the Fund.

24.    To raise money for the Fund, White and KGW offer and sell limited partnership interests in the Fund, which purports to: (i) be limited to 100 accredited investors, and (ii) require

a minimum initial investments of $250,000.  More specifically, investors are told that RFF GP, as the Fund's general partner (owned and controlled solely by White), pools investor funds to trade foreign currencies in order to earn returns that will be used to pay returns to investors. Other than possessing a limited partnership interest in the Fund, investors do not play any role in earning any returns for the Fund.

25.    In September 2011, White: (i) secured the Fund's first investor, an individual in Houston, Texas who invested $100,000, (ii) opened a Forex trading account for the Fund with Forex Capital Markets, LLC ("FXCM"), and (iii) commenced Forex trading on behalf of the Fund.  Since then, White and KGW Capital have solicited another $7 million in investments in the Fund from more than 20 investors across the United States.

26.    White and KGW Capital have continued to actively solicit investments in the Fund.  In particular, they have provided information: (i) on KGW Capital's website, (ii) on the Fund's website, (iii) in the Private Offering Memorandum for the Fund, (iv) in marketing materials handed out to prospective investors, (v) during in-person solicitations about the Fund, and (vi) in promotional materials provided to the MoneyShow to advertise and market its speakers.

27.    For example, on May 14, 2013, White and KGW Capital hosted a presentation at the MoneyShow in Las Vegas to solicit investments in the Fund.  During this presentation, White distributed marketing materials to prospective investors that: (i) touted the Fund's 385 percent total return from January 2009 through April 30, 2013, and its 36 percent annual growth rate; and (ii) compared the Fund's historical performance and growth to seven indices and to gold, purporting to show that the Fund has more than doubled the next closest investment.  On the websites for KGW Capital (www.KGWCapital.com) and the Fund (www.RevelationForex.com),

White recently published updated Fund performance numbers through May 31, 2013, purporting to show a total return for the Fund of 393 percent from January 2009 through May 31, 2013. These representations are false, as Defendants White, KGW Capital, the Fund, and RFF GP know or are severely reckless in not knowing.

28.     White and KGW Capital also claim – on KGW Capital's website, in marketing materials, and orally in presentations to prospective investors – that the Fund: (i) began in January 2009, (ii) is a "$1 billion highly specialized currency hedge fund," and (iii) "has achieved positive gains in 42 of the last 52 months (80.77% months with gains) through April 30, 2013." In fact, all of these representations are false, as Defendants White, KGW Capital, the Fund, and RFF GP know or are severely reckless in not knowing.

29.     As Defendants White, KGW Capital, the Fund, and RFF GP know or are severely reckless in not knowing: (i) neither the Fund nor its trading activities began in January 2009; (ii) White and KGW Capital have raised approximately $7.1 million, not $1 *billion*, in investments for the Fund; and (iii) the Fund has not achieved a compound annual growth rate of more than 36 percent and total returns of more than 393 percent. In fact, Fund's FXCM trading records show trading losses of more than $550,000 and, as of May 31, 2013, unrealized trading losses of approximately $1,419,600. Moreover, the Fund has achieved a gain in only seven of the 20 months in which it has actually traded in foreign currencies (not 42 of 52 months, as claimed).

30.     As of May 31, 2013, the Fund has approximately $4.4 million invested in foreign currency positions with a market value of only approximately $3 million.

**White's Misuse of Funds**

31.     Bank records reveal that White has misappropriated more than $1.7 million in investor funds to, among other things, pay for personal expenses, finance other businesses, and

for other undisclosed purposes unrelated to the Fund's investment activities.  Contrary to his claims to pool investor funds to achieve trading returns, for example, White has routed investor funds to two of his other businesses, Relief Defendants Meridian Propane (approximately $248,600) and KGW Real Estate ($97,000).  Likewise, while Fund offering documents represent that the Fund's general partner (RFF GP) charges a management fee of two percent per year and a performance fee of 20 percent per year, the amount of investor funds expended by White greatly exceeds any management fee or performance fee that RFF GP could have charged the Fund.

**FIRST CLAIM**
**Violation of Section 17(a) of the Securities Act**

32.    The Commission repeats and incorporates paragraphs 1 through 31 of this Complaint by reference.

33.    Defendants, directly or indirectly, singly, in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication of interstate commerce and by use of the mails, have: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

34.    As part of and in furtherance of this scheme, Defendants, directly and indirectly, prepared, disseminated, or used written offering documents, promotional materials, and oral presentations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading, including but not limited to, those statements and omissions set forth in paragraphs 1 through 31 above.

35.     Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness with regard for the truth.  Defendants were also negligent in their actions regarding the representations and omissions alleged herein.

36.     By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5

37.     The Commission repeats and incorporates paragraphs 1 through 31 of this Complaint by reference.

38.     Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have:  (a) employed devices, schemes and artifices to defraud; (b)  made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and  (c)  engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

39.     As a part of and in furtherance of their scheme, Defendants, directly and indirectly, prepared, disseminated, or used, marketing materials, offering documents, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 31 above.

40.    Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

41.    By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate the provisions of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**THIRD CLAIM**
**Claim against the Relief Defendants**

42.    The Commission repeats and incorporates paragraphs 1 through 31 of this Complaint by reference.

43.    As set forth in this Complaint, the Relief Defendants have received funds from one or more of the Defendants, which are the proceeds of, or are traceable to the proceeds of, the unlawful activities of the Defendants as alleged above.

44.    The Relief Defendants have obtained the funds alleged above as part of and in furtherance of the securities violations alleged in paragraphs 1 through 31 and, under the circumstances, it is not just, equitable or conscionable for them to retain the funds.    As a consequence, the Relief Defendants have been unjustly enriched.

**RELIEF REQUESTED**

Plaintiff respectfully requests that this Court:

**I.**

Temporarily restrain and preliminarily enjoin the Defendants from violating the federal securities laws, including Section 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## II.

Permanently enjoin the Defendants, their agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## III.

Temporarily restrain and preliminarily enjoin Defendant White from participating, directly or indirectly, including but not limited to, through any entity owned or controlled by Defendant White, in the issuance, purchase, offer, or sale of any security; and

Permanently enjoin Defendant White from participating, directly or indirectly, including but not limited to, through any entity owned or controlled by Defendant White, in the issuance, purchase, offer, or sale of any security, provided however, that such permanent injunction shall not prevent Defendant White from purchasing or selling securities for his own personal account.

## IV.

Order the Defendants to disgorge an amount equal to the funds and benefits obtained illegally, or to which they are otherwise not entitled, as a result of the violations alleged herein, plus prejudgment interest on that amount, and order the Relief Defendants to disgorge any gains or proceeds they received that are connected to the conduct described above.

## V.

Order the Defendants to pay civil monetary penalties in an amount to be determined as appropriate by the Court pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and

Section 20(d) of the Securities Act [15 U.S.C. § 78u(d)] for their violations of the federal securities laws as alleged herein.

## VI.

Order such further relief as this Court may deem just and proper, including but not limited to emergency relief sought in the contemporaneously filed Motion for Temporary Restraining Order and Other Emergency Relief.

Respectfully submitted,

DATED:  July 9, 2013

JANIE L. FRANK
Lead Attorney
Texas Bar No. 07363050
SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102-6882
(817) 978-6478
(817) 978-4927 (fax)
frankj@sec.gov

B. DAVID FRASER
Texas Bar No. 24012654
SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX  76102-6882
(817) 978-1409
(817) 978-4927 (fax)
fraserb@sec.gov

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Case No.: 4:13-cv-383** |
| | § | |
| **KEVIN G. WHITE,** | § | |
| **KGW CAPITAL MANAGEMENT, LLC,** | § | |
| **REVELATION FOREX FUND, L.P., and** | § | |
| **RFF GP, LLC,** | § | |
| | § | |
| Defendants, | § | |
| | § | |
| **and** | § | |
| | § | |
| **MERIDIAN PROPANE, L.P., and** | § | |
| **W CORPORATE REAL ESTATE L.P. d/b/a** | § | |
| **KGW REAL ESTATE,** | § | |
| | § | |
| Relief Defendants. | § | |

## ORDER GRANTING MOTION TO UNSEAL
## DOCKET AND PROCEEDINGS

This matter came before the Court on the motion of Plaintiff Securities and Exchange

Commission (the "Commission") to unseal the docket and proceedings in this case.  The Court,

having reviewed the motion is of the opinion that Plaintiff's motion (Dkt. 16) should be GRANTED.

The case now having been referred to the undersigned for all pretrial matters, IT IS

THEREFORE ORDERED that these proceedings, the pleadings, motions, memoranda, all orders,

and all other filings herein shall be unsealed.

SO ORDERED.

**SIGNED this 11th day of July, 2013.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

